588 A.2d 63

**TEMPLE UNIVERSITY and PMA Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (INSURANCE COMPANY OF NORTH AMERICA and McNaughton), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted July 27, 1990.

Decided March 8, 1991.

5. Because we dispose of this case on this issue, we need not address the City's second argument.

396

Clifford Goldstein, Rawle & Henderson, Philadelphia, for petitioners.

Steven M. Levin, Harris & Silverman, Philadelphia, for respondent, Ins. Co. of North America.

Martin K. Brigham, with him, Sarah B. Knowlton, Galfand, Berger, Lurie & March, Philadelphia, for respondent, Dolores M. McNaughton.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge.

Temple University and PMA Insurance Company appeal from an order of the Workmen's Compensation Appeal Board which affirmed the referee's order that Temple and PMA pay compensation to Dolores McNaughton (claimant) pursuant to the Pennsylvania Workmen's Compensation Act.[1] We also affirm.

In February 1980, claimant was employed as an administrative assistant to a dean at Temple. PMA carried Temple's workmen's compensation insurance at that time. On February 27, 1980, the heating and air conditioning unit was being repaired in Pearson Hall where claimant worked. The fumes emitted during the repairs were so offensive that the building was evacuated; however, claimant remained in the building longer than other employees because she was in charge in the dean's absence. Claimant contacted Temple's physical plant and the vice president's offices to inquire whether it was safe to remain in the building. Despite assurances from both offices that it was safe to remain, the effects of the odor eventually forced claimant outside. Later that day, she developed a headache, irritated sinuses, a dry mouth and nausea.

Claimant did not feel well, but returned to work the next day. She was unable to work the following day and called her family physician, who thought it might be the flu because she suffered from similar symptoms, such as headaches, muscle aches and fatigue. After a weekend to recuperate, claimant worked off and on until March 6 when she went to see her physician, who prescribed antibiotics. The medication caused her symptoms to intensify, resulting

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

in dizziness, inability to stand and nausea. Although her symptoms persisted, claimant eventually returned to work; however, she was not always working full hours even though she was being paid in full.

Claimant visited a number of physicians in an attempt to find the cause of her illness, but none was able to relieve her symptoms. In July 1981, claimant experienced exacerbated symptoms when she was exposed to an offensive odor in her office which she described as similar to the smell of a dead rat. Claimant again missed work due to this episode. By this time, Insurance Company of North America (INA) had assumed Temple's workmen's compensation coverage. Despite continuing symptoms, claimant worked through June 14, 1982 by taking short breaks to rest and making use of extended vacations, paid leaves and shortened work days. As of June 14, 1982, she asked for a leave of absence.

In June 1982, claimant came under the care of Dr. Joseph J. McGovern, a physician in California who specializes in allergies and environmental medicine. Testing confirmed that claimant's immune system was malfunctioning. Dr. McGovern believed that claimant's symptoms were the result of a significant chemical exposure. Although claimant remembered the incident at Temple, she dismissed it, believing that it had occurred during the summertime because she thought the air conditioning unit was being fixed; yet the onset of her symptoms was in February 1980. Dr. McGovern put claimant on a program of antigens,[2] which had the effect of slowly allowing her to tolerate her environment again. Upon her return to Philadelphia, claimant informed the dean at Temple of the results of her testing.

On February 1, 1983, claimant attempted to return to work. She could stay for no more than 45 minutes because of the chlorine odor coming from the swimming pools in

2. Antigens are defined as miniscule doses of material of which the patient's system is intolerant but which develops protective antibodies against that material so that the patient's immune system will improve.

Pearson Hall. Claimant again experienced exacerbated symptoms.

After this flare-up, claimant once again discussed her condition and Dr. McGovern's suspicions about the chemical exposure with the dean. Wishing to find out the cause of her illness, claimant asked the dean to find out whatever he could about the chemical leak at the university. Shortly after their discussion, the dean mailed claimant a copy of *Temple University News*, dated February 28, 1980, which reported the chemical leak in Pearson Hall on February 27, 1980. At that point, claimant connected her illness to the leak at the university. She mailed a copy of the article to Dr. McGovern who confirmed her belief. On February 23, 1983, claimant notified the dean that she believed the chemical leak in February, 1980 caused her symptoms.

Based upon extensive testing, Dr. McGovern concluded that claimant is totally disabled and suffers from a dysfunction of her immune system and organic brain damage because of the chemical exposure at work. Claimant's vocational opportunities are severely restricted because of her mental and environmental limitations. Testing revealed she is incapable of performing tasks required of a file clerk. She has had to reduce her exposure to chemicals in many ways. For example, it was necessary to dispose of all synthetics in her home, including wall-to-wall carpeting and clothing, and to limit her exposure to exhaust fumes while outside.

Claimant filed a claim petition alleging an injury under section 301(c)(1) of the act, 77 P.S. § 411(1) and occupational disease under section 301(c)(2) of the act, 77 P.S. § 411(2) and section 108(c) of the act, 77 P.S. § 27.1(c). The referee ordered Temple and PMA to compensate claimant as of June 14, 1982. The board affirmed the order.

Because claimant, who had the burden of proof, prevailed before the referee and the board took no additional evidence, our scope of review on appeal is to determine if there has been a violation of constitutional rights, errors of law or a decision based on a lack of substantial evidence. Section

704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Ace Tire Co. v. Workmen's Compensation Appeal Board (Hand)*, 101 Pa.Commonwealth Ct. 186, 515 A.2d 1020 (1986).

Temple and PMA first argue that the referee erred as a matter of law when he found that claimant suffered a compensable, work-related injury pursuant to section 301(c)(1) and not an occupational disease pursuant to section 301(c)(2), yet applied the statute of limitations and discovery rule doctrine exclusive to occupational diseases. Temple and PMA assert that this distinction between injury and occupational disease is important. In injury cases, section 315 of the act, 77 P.S. § 602, bars a claim petition not filed within three years of the date of claimant's injury, *Young v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel)*, 97 Pa.Commonwealth Ct. 356, 509 A.2d 945 (1986), and claimant's petition was filed almost three years and nine months after her exposure to the chemical leak.

Actually, the referee found that claimant suffered from both an injury pursuant to section 301(c)(2) *and* an occupational disease pursuant to section 108(c). The board held that these findings are not inconsistent. We agree.

Finding Dr. McGovern's testimony to be credible[3], the referee adopted Dr. McGovern's conclusion that claimant's illness was the result of an overexposure to ethyl acrylate and freon, a halogenated hydrocarbon.[4] Section 301(c)(2) provides that the term "injury" includes "occupational dis-

3. Questions of credibility and evidentiary weight are within the province of the referee, who is the finder of fact and may accept or reject the testimony of any witness in whole or in part. *Mardee Sportswear v. Workmen's Compensation Appeal Board (Franglo, Inc.)*, 98 Pa.Commonwealth Ct. 327, 511 A.2d 905 (1986).

4. Temple and PMA assert that the only evidence presented by claimant to support the claim of occupational disease was improperly admitted over their objection to a leading question posed to the claimant's medical witness, Dr. McGovern, by claimant's attorney. In addition, Temple and PMA assert that Dr. McGovern's opinion was equivocal. We disagree with these assertions. Upon reviewing the record, we find the question was not leading, nor was Dr. McGovern's answer equivocal.

ease" as defined by section 108 of the act. Section 108(c) specifically defines as an occupational disease poisoning by halogenated hydrocarbons in any occupation involving exposure thereto. Therefore, the finding that claimant suffers from both an injury and an occupational disease is supported by substantial evidence.[5]

In *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Feiertag)*, 90 Pa.Commonwealth Ct. 567, 579, 496 A.2d 412, 419 (1985), we stated that:

> [I]n cases of total disability due to an occupational disease, the three-year period in which a claimant must file a claim petition under § 315 of the Act commences at the time when a claimant knows, *or should have known* through reasonable diligence, of his or her disability and that it is caused by an occupational disease. (Emphasis added.)

Temple and PMA contend that this action is barred by the three-year statute of limitations because claimant should have known more than three years before filing her claim petition that her disability was caused by an occupational disease. They cite claimant's own testimony in support of this contention. The record does show claimant knew she had to leave the workplace on February 27, 1980 because the fumes were making her ill.

However, the referee, affirmed by the board, found to the contrary. It is plausible that because claimant's symptoms were flu-like, she thought she had the flu. When her symptoms continued she sought help from several physicians in an effort to find out the cause of her illness. The referee, supported by substantial evidence, found that claimant did not realize that her disability was work-related

---

5. Substantial evidence is that relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa.Commonwealth Ct. 158, 504 A.2d 985 (1986). The board must affirm the referee's decision where the finding of facts are supported by substantial evidence. *Gabriel v. Workmen's Compensation Appeal Board (No. 1 Contracting Corp.)*, 102 Pa.Commonwealth Ct. 470, 518 A.2d 895 (1986).

until February 23, 1983, when she read the *Temple University News* article which confirmed the connection between her illness and the exposure. It was then that the statute of limitations was triggered. Claimant filed her claim on November 9, 1983, well within the three year limitation.

■ Temple and PMA next argue that claimant failed to give timely notice to Temple of her illness. The referee found, based on substantial evidence, that on February 23, 1983, claimant duly notified Temple of her knowledge that her illness was work-related. Section 311 of the act, 77 P.S. § 631, requires an employee to give notice to an employer within 120 days of the date claimant has knowledge, or by the exercise of reasonable diligence should have had knowledge, of a disability resulting from an occupational illness which has a possible relationship to employment. *Jones & Laughlin Steel Corp.* Claimant notified Temple the same day she realized her illness was work-related. Thus, claimant has satisfied both the statute of limitations and notice requirements set forth in the act.

Finally, PMA argues that if it is found to be liable for claimant's 1980 injury, its liability had ceased by July, 1981 when INA had assumed Temple's coverage. In July, 1981 and February, 1983 when claimant reacted to offensive odors at work, Temple's workmen's compensation insurer was INA. PMA claims that these episodes were aggravations of a pre-existing condition, constituting new injuries, and not the recurrence of a prior disability. The referee accepted "the description of Dr. McGovern that the recurrence of symptoms in late 1980 and the summer of 1981 were symptoms of Mrs. McNaughton's disability rather than a permanent aggravation of the pre-existing work-related condition." The referee found PMA to be liable for the recurrences of a prior disability in finding of fact 19 and dismissed PMA's petition to join INA.

■ If a disability results from an aggravation of a pre-existing condition, then the insurer at the time of the aggravation is responsible for compensation. However, if a

new incident merely causes a recurrence of a prior disability, then the insurer at the time of the original injury is responsible. *Lackawanna Refuse v. Workmen's Compensation Appeal Board (Christiano)*, 74 Pa.Commonwealth Ct. 248, 459 A.2d 889 (1983).

 Whether a disability results from a new injury or is the recurrence of a prior work-related condition is a question of fact to be determined by the referee. *Lackawanna Refuse*. Therefore, our purpose is merely to examine the record to determine whether it contains substantial evidence which would support the referee's finding that claimant suffers from a recurrence of a disability. The record contains evidence that claimant never fully recovered from the 1980 exposure to chemicals. Under this view of the evidence, the July 1981 and February 1983 episodes merely exacerbated claimant's symptoms, which had never completely disappeared. *See Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry)*, 117 Pa.Commonwealth Ct. 47, 543 A.2d 201 (1988).

Therefore, we affirm the order of the board.