597 A.2d 182

**Thomas HEBDEN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BETHENERGY MINES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1990.

Decided Aug. 27, 1991.

As Amended Sept. 3, 1991.

180

Blair V. Pawloski, for petitioner.

John J. Bagnato, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, PELLEGRINI, KELLEY, and BYER, JJ.

BYER, Judge.

Thomas Hebden appeals from a decision of the Workmen's Compensation Appeal Board. The board had affirmed the decision of a workmen's compensation referee granting Bethenergy Mines, Inc.'s petition to terminate a compensation award.

The issue is whether the principles of claim preclusion or issue preclusion prevent an employer from seeking to terminate a prior award of workmen's compensation benefits for disability resulting from occupational pulmonary disease, specifically, coal worker's pneumoconiosis. The referee and the board held that the employer, Bethenergy Mines, Inc., was not precluded from seeking to terminate Hebden's benefits pursuant to section 413 of The Pennsylvania Work-

men's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. We affirm.[1]

## I. Background

On July 19, 1985, a workmen's compensation referee awarded Hebden $227.40 per week effective August 25, 1983, as compensation for partial disability as a result of coal worker's pneumoconiosis. This compensation would continue "thereafter into the future until such time as the claimant's disability ceases or changes in nature but not to exceed five hundred (500) weeks, unless disability becomes permanent in nature." Referee Finding of Fact 3. Neither party appealed this award.

On November 2, 1987, the employer filed a form "petition for termination, suspension or modification of compensation," specifically designating the petition (by a checkmark in the appropriate box) as one for modification. The employer's petition stated, "[b]ased on recently received medical evidence, claimant's disability has changed and he is no longer disabled from occupational pulmonary disease." (3a). Hebden denied this assertion.

Several hearings were held before another referee at which time the parties introduced medical testimony and other evidence, including medical reports, pulmonary function studies, x-rays, and x-ray "re-read" reports. Doctors Pickerill and Katter expressed medical opinions on Hebden's condition based upon physical examinations conducted on March 6 and November 2, 1987, respectively, and upon a variety of medical tests. These medical experts concluded that Hebden did not suffer from coal worker's pneumoconiosis, but suffered instead from non-occupational bronchial asthma, and that his condition did not prevent or impair him from returning to work at his last job as a shuttle car operator in the mines. Findings 10, 11. Additionally, the

1. Our scope of review is limited to a determination of whether constitutional rights have been violated, whether the adjudication was in accordance with the law, and whether the referee's findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

employer introduced the August 24, 1988 medical report of Dr. Fino who had examined all of the extensive clinical data and medical records regarding Hebden's pulmonary condition that had been generated from 1977 through 1988. Dr. Fino concluded that Hebden suffered from non-occupational bronchial asthma which did not prevent him from returning to coal mining work or a job of similar effort. Finding 12.

Hebden's medical witness, Dr. Klemens, testified to the contrary that he had examined Hebden in October 1987, and that Hebden continued to suffer from coal worker's pneumoconiosis. Dr. Klemens also stated that Hebden remained partially disabled and unable to return to his former employment. Finding 13.

The referee resolved this conflict in the medical evidence in favor of the employer, and made the following finding of fact:

> Based on the evidence presented and careful review of the record, this Referee finds the opinions expressed by Doctors Katter and Pickerill as corroborated by Dr. Fino and others more credible than those of Dr. Klemens. *The claimant is neither partially or totally disabled as a result of coal worker's pneumoconiosis or any occupationally acquired lung disease.* It is the opinion of several physicians that the claimant suffers from a non-occupational disease, namely, bronchial asthma which has no connection whatsoever to the coal mining environment.

Finding 14 (emphasis added).

Based upon this finding, the referee concluded that the employer had met its burden of proving Hebden's disability had ceased. The referee also held that there was no "res judicata" preclusion (or claim preclusion) because the prior award of benefits addressed Hebden's disability "at that point and time," but the petition to terminate raised the issue of Hebden's physical condition as of March 6, 1987 and beyond. Finding 17. The board affirmed.

 Hebden argues that the principle of "res judicata" bars a referee from finding that a claimant has neither coal

worker's pneumoconiosis [2] nor any occupationally acquired lung disease where a prior referee found the claimant to be partially disabled as a result of coal worker's pneumoconiosis.[3]

2. Coal worker's pneumoconiosis is a compensable occupational disease under section 108(q) of the act, 77 P.S. § 27.1(q).

3. Hebden's brief suggests that the referee had no authority to terminate benefits or to consider the employer's petition as a petition to terminate, because the employer had designated the petition as requesting modification and had not formally amended the petition to request termination of benefits. Brief for petitioner, 12. However, Hebden did not make any objection on this basis before the referee and did not raise this as an issue in his appeal to the board. (150a–51a). Therefore, this issue has not been preserved, and Hebden cannot raise it for the first time on appeal to this court. *Siano v. Workmen's Compensation Appeal Board (Dileo's Restaurant)*, 137 Pa.Commonwealth Ct. 487, 489, 586 A.2d 1008, 1009 (1991).

However, we observe that a referee may properly consider an employer's petition for modification of benefits under section 413, 77 P.S. § 772, as a petition for termination where the claimant would not have been misled by the form of the petition, had notice of the relief sought by employer, and had a full and fair opportunity to contest the basis for the employer's assertions. *Compare Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Commonwealth Ct. 15, 589 A.2d 291 (1991) (referee did not err in treating employer's petition for termination as petition for modification) *and Bell Telephone v. Workmen's Compensation Appeal Board (Rothenbach)*, 98 Pa.Commonwealth Ct. 332, 511 A.2d 261 (1986) (referee did not err in treating employer's answer to claimant's petition for reinstatement as a petition for termination of benefits under section 413) *with Coover v. Workmen's Compensation Appeal Board (Browning–Ferris Industries)*, 140 Pa.Commonwealth Ct. 16, 591 A.2d 347 (1991) (referee erred in sua sponte terminating claimant's benefits where employer had filed petition for suspension/modification and where employer had not requested termination of benefits prior to the close of the hearing process) *and Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990) (referee erred in sua sponte terminating claimant's benefits where employer had filed petition for modification and claimant had no notice of employer's intent to terminate nor opportunity to respond to that intent prior to the close of the hearing process).

In this case, the employer designated its petition under section 413 as a petition for modification as of March 6, 1987 by checking the "modified as of" box on the form. However, the employer specifically stated in the petition that the "claimant's disability has changed and he is no longer disabled from occupational pulmonary disease." (3a). The petition also requested a supersedeas. Hebden's answer contended there was no medical evidence to show that he had recovered from the effects of his disabling pulmonary disease. At the three hearings before the referee, each party offered medical evidence on the issues

## II. "Res Judicata"—In General

"Res judicata" is a generic term used by courts and litigants to refer to the various ways in which a judgment in an action will have a binding effect in a later action. *Clark v. Troutman*, 509 Pa. 336, 342, 502 A.2d 137, 139 (1985). The generic term refers to two related principles, "technical res judicata" (sometimes called "strict res judicata"), and "broad res judicata" (frequently called "collateral estoppel")." *Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.)*, 88 Pa.Commonwealth Ct. 76, 79, 488 A.2d 1177, 1179 (1985).

As Mr. Justice Roberts explained in *Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 415 A.2d 53 (1980), the "modern res judicata doctrine" encompasses two different, though related ways

> in which a judgment in one action will have a binding effect on another. This includes the effect of the former judgment where the later action proceeds on all or part of the very claim which was the subject of the former. In traditional terminology, this effect is called merger or bar; in modern terminology it is called claim preclusion. A second effect is traditionally known as collateral estoppel and modernly called issue preclusion. It has to do with an issue determined in a first action when the same issue arises in a later action based upon a different claim or demand.

490 Pa. at 107, 415 A.2d at 55 (Roberts, J., dissenting) (quoting F. James, Jr. and G. Hazard, Jr., *Civil Procedure* 532 (2d ed. 1977)). *See* Restatement (Second) of Judgments, § 18 (Judgment for Plaintiff–The General Rule of Merger),

of whether Hebden was disabled because of coal miner's pneumoconiosis or any other occupational pulmonary disease, and whether Hebden was able to return to his former work. Under these circumstances, Hebden received notice of the nature of the employer's termination request and had a full and fair opportunity to contest the issue of whether he was disabled because of coal worker's pneumoconiosis or otherwise as of March 6, 1987, or whether, as employer asserted, his disability from an occupational pulmonary disease had ceased.

§ 19 (Judgment for Defendant—The General Rule of Bar), and § 27 (Issue Preclusion–General Rule).[4]

 The modern principle of claim preclusion is that a final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit or action between the parties or their privies on the same cause of action. *Zarnecki v. Shepegi*, 367 Pa.Superior Ct. 230, 236, 532 A.2d 873, 877 (1987), *appeal denied*, 518 Pa. 643, 542 A.2d 1371 (1988). The "fundamental principle" underlying the rule of claim preclusion is that a judgment should be "conclusive as between the parties and their privies in respect to every fact which properly could have been considered in reaching the determination and in respect to all points of law relating directly to the cause of action and affecting the subject matter before the court." *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 498, 327 A.2d 72, 75 (1974). Claim preclusion applies not only to matters which were actually litigated, but also to matters which should have been litigated at the first proceeding if they were part of the same cause of action. *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.)*, 113 Pa.Commonwealth Ct. 601, 604, 537 A.2d 971, 973 (1988).

 Issue preclusion, traditionally known as collateral estoppel or broad res judicata, "forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989); *see also*

**4.** The drafters of the Restatement (Second) of Judgments adopted the modern terminology preferred by Mr. Justice Roberts in *Lench*. "Claim preclusion" is used in the Restatement (Second) of Judgments *to describe the effects of merger and bar that had traditionally been included within the scope of technical res judicata.* "Issue preclusion" is used to describe the effect traditionally known as collateral estoppel. In *Keystone Water Co. v. Pennsylvania Public Utility Commission*, 81 Pa.Commonwealth Ct. 312, 320, 474 A.2d 368, 373 (1984), an en banc panel of this court recommended the language of the Restatement (Second) of Judgments to overcome the "bewildering effect of the accretion of labels attached to the subjects of res judicata and estoppel." We will follow that recommendation and will use the modern terminology.

*Odgers v. Unemployment Compensation Board of Review,* 514 Pa. 378, 387 n. 13, 525 A.2d 359, 364 n. 13 (1987). Unlike claim preclusion, there is no requirement that there be an identity of parties between the two actions to preclude relitigation of an issue, and issue preclusion may be asserted as either a "sword or a shield" by a stranger to the prior action as long as the party against whom it is asserted was a party or in privity with a party. *Calesnick v. Board of Finance & Revenue,* 114 Pa.Commonwealth Ct. 292, 298, 538 A.2d 989, 991 (1988), (quoting *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Superior Ct. 225, 236–37, 464 A.2d 1313, 1318–19 (1983)); *see also In re Estate of Ellis,* 460 Pa. 281, 333 A.2d 728 (1975) (discarding "mutuality of parties" requirement for application of issue preclusion, and adopting the position of Justice (later Chief Justice) Traynor in *Bernhard v. Bank of America National Trust and Savings Association,* 19 Cal.2d 807, 122 P.2d 892 (1942), that issue preclusion prevents relitigation of an issue where the party against whom it is used or one in privity with that party had a full and fair opportunity to litigate the issue in a prior action).

There is another important distinction between the principles of claim preclusion and issue preclusion. Claim preclusion involves the same claim or cause of action in both the prior and subsequent actions, but issue preclusion operates to prevent relitigation of an issue in a later action based upon a claim or cause of action different from the claim or cause of action previously asserted. *McCarthy v. Township of McCandless,* 7 Pa.Commonwealth Ct. 611, 619, 300 A.2d 815, 820 (1973); *Zarnecki v. Shepegi* 367 Pa.Super. at 236, 532 A.2d at 877. · Issue preclusion is "designed to prevent relitigation of issues which have once been decided *and have remained substantially static,* factually and legally." *Keystone Water Co. v. Pennsylvania Public Utility Commission,* 81 Pa.Commonwealth Ct. 312, 320, 474 A.2d 368, 373 (1984) (emphasis added).

In this appeal, the parties argue the issue generally in terms of "res judicata," without distinguishing between

claim preclusion ("technical res judicata") or issue preclusion ("broad res judicata" or collateral estoppel). However, we find it necessary to draw these distinctions in order to decide the issues precisely and in a manner which will provide guidance to tribunals and litigants.

### III. Claim Preclusion

A final judgment in a prior proceeding operates to preclude a claim *only* where there is a concurrence of four conditions: (1) identity of the subject matter; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or capacity of the parties suing or being sued.[5] *Evans v. Workmen's Compensation Appeal Board (Deitch Co.)*, 121 Pa.Commonwealth Ct. 364, 370, 550 A.2d 868, 871 (1988), *appeal denied*, 525 Pa. 606, 575 A.2d 571 (1990). It is not possible "to lay down an all-inclusive and satisfying formula to determine whether or not 'causes of action' are identical." *McCarthy v. Township of McCandless*, 7 Pa.Commonwealth Ct. at 617–18, 300 A.2d at 820 (1973) (footnote omitted). Nevertheless, it generally has been held that there is identity of causes of action when the subject matter and the ultimate issues are the same in both the old and the new proceedings. *Fields v. Workmen's Compensation Appeal Board (Duquesne Light Co.)*, 114 Pa.Commonwealth Ct. 645, 647, 539 A.2d 507, 508, *appeal denied*, 520 Pa. 599, 552 A.2d 253 (1988) (collecting cases).

In a line of workmen's compensation cases beginning with *Robachinski v. Workmen's Compensation Appeal Board (Glen Nan, Inc.)*, 33 Pa.Commonwealth Ct. 89, 380 A.2d 952 (1977), we consistently have held that claim preclusion does not operate to bar a second claim petition which alleges a date of disability later than that alleged in the first claim petition. *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (DeMarco)*, 89 Pa.Commonwealth Ct. 41, 43–44, 491 A.2d 941, 943 (1985),

5. The "quality or capacity" of the parties suing or being sued refers to the legal status of the parties. *See, e.g., Fisher Building Permit Case*, 355 Pa. 364, 49 A.2d 626 (1946).

*rev'd on other grounds,* 513 Pa. 526, 522 A.2d 26 (1987). There is no identity of causes of action in such situations because the subject matter and the ultimate issues of the two claim petitions, being based upon different time periods, are not identical. *Robachinski,* 33 Pa.Cmwlth. at 93, 380 A.2d at 953. *See also Jones v. Laughlin Steel Corp.,* 89 Pa.Cmwlth. at 44, 491 A.2d at 943 (collecting cases). The state of the claimant's health *at a given time* is the subject matter of any claim petition alleging disability, and the ultimate issue is whether or not the claimant is disabled within the meaning of the act at the time alleged in the petition. *Evans* 121 Pa.Cmwlth. at 370–71, 550 A.2d at 871 (quoting *Robachinski* 33 Pa.Cmwlth. at 92–93, 380 A.2d at 953). The issue of a claimant's disability is not static.

We also consistently have applied these principles in the context of prior/subsequent claim petitions for disability alleged to have been caused by occupational pulmonary diseases. *See, e.g., Petcovic v. Workmen's Compensation Appeal Board (St. Joe Zinc),* 125 Pa.Commonwealth Ct. 110, 557 A.2d 57 (1989), *appeal denied,* 525 Pa. 665, 583 A.2d 795 (1990); *Fields; Sullivan Trail Manufacturing Co. v. Workmen's Compensation Appeal Board (Wetzel),* 80 Pa.Commonwealth Ct. 144, 471 A.2d 151 (1984). *Cf. Kanyan v. Workmen's Compensation Appeal Board (Helvetia Coal Co.),* 125 Pa.Commonwealth Ct. 173, 557 A.2d 792 (1989), *appeal denied,* 523 Pa. 652, 567 A.2d 655 (1989) (although subsequent proceeding on claim petition for occupational pulmonary disease was not barred, medical evidence that was substantially the same as that introduced at first proceeding where claim was denied was insufficient to permit an award). We have observed in this context that disabilities from occupational pulmonary diseases are progressive and that manifestations of the diseases may also be progressive, so that a finding by the first referee that there was no disability or no manifestations of the disease at that time will not preclude a second referee from finding disability at a later date. *Petcovic; Kanyan; Fields; Sullivan Trail.*

■ We are now asked to consider whether the progressive nature of occupational pulmonary diseases necessarily precludes an employer from claiming that a claimant's disability from such a disease has ceased at some point after compensation has been awarded. We hold there is no claim preclusion in this situation. This holding follows from our decision in *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Prazinko)*, 94 Pa.Commonwealth Ct. 477, 504 A.2d 387 (1986).

In *Prazinko*, the referee ruled that the employer's petition to terminate compensation was barred by the previous referee's finding that the claimant was *permanently* and totally disabled from coal worker's pneumoconiosis. The petition to terminate filed some four and one-half years later alleged that the claimant was *no longer* totally or partially disabled, based upon evidence that the claimant had been observed working as a trash collector and medical evidence that claimant was no longer disabled from pneumoconiosis. The board agreed with the employer that the termination petition was not precluded, but affirmed the referee for other reasons.

We vacated the board's order based on those other reasons, but agreed with the board that claim preclusion did not bar the employer's termination proceeding despite the previous referee's determination that Prazinko was permanently and totally disabled. The nature of workmen's compensation continuing liability "is such that change must be anticipated and is contemplated by the Act." *Prazinko*, 94 Pa.Commonwealth Ct. at 480, 504 A.2d at 388. Section 413 of the act specifically permits termination of an award based upon changes in the employee's disability, and provides:

A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate ... an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased.... Such modification, reinstatement, suspension, or termination

shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased....

The ultimate issue in the claim petition and in the later petition to terminate is whether the claimant is disabled *at the time alleged in each petition;* thus, the employer is not directly attacking the original award of benefits. *Prazinko,* 94 Pa.Commonwealth Ct. at 480–81, 504 A.2d at 388. In rejecting the claim preclusion argument in *Prazinko* and the board's holding that a "termination petition is inappropriate in the case of a progressive disease," we explained:

It is true that the original award found Claimant to be "permanently" disabled; however, the state of medical arts is not such that an award or the denial thereof can preclude all change in a claimant's physical state for all time. The Employer's termination petition is not barred by res judicata.

* * * * * *

As noted above, we do not feel that the medical arts have reached such a level where it can be said unequivocally that pneumoconiosis is always progressive; indeed, the medical testimony presented in this case would seem to indicate that all forms of that disease are not progressive. The state of health of each individual workmen's compensation claimant is a unique case. *We are not inclined to adopt a hard-and-fast rule that termination petitions are "inappropriate" for any particular class of disability.*

*Id.,* 94 Pa.Commonwealth Ct. at 481–82, 504 A.2d at 389 (emphasis added).

In *Caggiano v. Workmen's Compensation Appeal Board (Kawecki Berylco Industries, Inc.),* 42 Pa.Commonwealth Ct. 524, 400 A.2d 1382 (1979), the claimant had refused to submit to the employer's request for a medical examination as provided in section 314 of the act, 77 P.S. § 651, and the employer filed a petition to terminate based on that refusal. The referee ordered the claimant to submit to this examination and the board affirmed. On appeal to

this court, the claimant argued that where a prior unappealed award had determined that claimant had a permanent disabling occupational disease (from beryllium poisoning), the employer should be barred from later petitioning to terminate and requesting a medical examination. We held that "res judicata" did not preclude the employer from litigating the issue of the claimant's current disability, because the principle "is limited to the finding of the state of disability at a given time." *Id.*, 42 Pa.Commonwealth Ct. at 527, 400 A.2d at 1384. In affirming the right of an employer to seek to terminate compensation for occupational disability that had been found to have been "permanent," we noted that section 413 of the act specifically provides for review of adjudications on the basis that a claimant's disability has increased, decreased, recurred, or temporarily or finally ceased.

In this case, the first referee found that, as of August 25, 1983, Hebden was partially disabled because of coal worker's pneumoconiosis, and awarded benefits to continue "until such time as claimant's disability ceases or changes in nature...." Finding 3. The employer filed its petition to terminate benefits on November 2, 1987, alleging that Hebden's "disability had changed and he is no longer disabled" *at that time* from coal worker's pneumoconiosis. Because the petitions involved determination of Hebden's disability at different dates and the petition to terminate alleged a change in disability, the subject matter and ultimate issues involved in the petitions clearly are not the same. There is no identity of the subject matter nor is there identity of causes of action. We hold that claim preclusion does not bar an employer from seeking to terminate an award of compensation for disability related to an occupational pulmonary disease based upon the alleged cessation of the claimant's disability.

### IV. Issue Preclusion

Where, as in this case, the parties are the same, the principle of issue preclusion operates to prevent relitigation of those issues decided by a prior final judgment

that (1) are identical; (2) were actually litigated; and (3) were essential to the judgment. *See, e.g., Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.)*, 88 Pa.Cmwlth. at 81, 488 A.2d at 1179; *Lambert v. Workmen's Compensation Appeal Board (Reitz Coal Co.)*, 106 Pa.Commonwealth Ct. 565, 569, 526 A.2d 1263, 1265 (1987); Restatement (Second) of Judgments, § 27 (1982).[6]

 On a claim petition, the claimant has the burden of establishing each of the elements necessary to sustain an award. *Halaski v. Hilton Hotel*, 487 Pa. 313, 317, 409 A.2d 367, 369 (1979). To become eligible for compensation under the occupational disease provisions, section 108 of the act, 77 P.S. § 27.1, requires that a claimant prove: (1) a disability resulting from a disease enumerated in section 108; and (2) the disease arose out of and was related to claimant's employment. *E.g., Crucible Steel (Colt Industries) v. Workmen's Compensation Appeal Board (Dorsey)*, 55 Pa.Commonwealth Ct. 271, 274, 425 A.2d 1108, 1110 (1980); *Stegner v. Canterbury Coal Co.*, 53 Pa.Commonwealth Ct. 617, 621, 419 A.2d 225, 227 (1980).

 If the claimant establishes that he or she has an enumerated occupational disease and that he or she had been employed in an industry in which the occupational disease was a hazard, the claimant is entitled to the rebuttable presumption that the disease arose out of and in the

---

**6.** The cases cited add a fourth "element," that the issue was "material to the adjudication." There is no issue that would be "essential" to the judgment yet not be "material to the adjudication." Therefore, we decline to include the redundant "material to the adjudication" element of the test for issue preclusion.

Where the parties in the second action are not the same, some cases have expressed the elements of issue preclusion somewhat differently. Under this formulation, litigation of an issue will be precluded where (1) the issue decided in the prior adjudication was identical; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with a party in the prior proceeding; (4) the party to be precluded (or the litigant in privity with that party) had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination of the issue was essential to the prior judgment. *E.g., City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 55–56, 559 A.2d 896, 901 (1989).

course of employment. Section 301(e) of the act, 77 P.S. § 413; *see Marcks v. Workmen's Compensation Appeal Board (City of Allentown)*, 119 Pa.Commonwealth Ct. 214, 220, 547 A.2d 460, 463 (1988) (citing *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 514 Pa. 450, 462, 525 A.2d 1204, 1211 (1987)). Although proof of such an occupational disease will relieve the claimant of the burden of proving that the disability arose out of and was related to his employment, *disability* from the disease *is not presumed* under the act, and the existence of the disease is not *per se* compensable.[7] *See, e.g., Buckingham v. Workmen's Compensation Appeal Board (Republic Steel Corp.)*, 57 Pa.Commonwealth Ct. 83, 85, 425 A.2d 890, 892 (1981) (affirming referee's finding that claimant had coal worker's pneumoconiosis but was not disabled as a result of that disease).

▪ For workmen's compensation purposes, "disability" is synonymous with "loss of earning power." *Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (Smith)*, 70 Pa.Commonwealth Ct. 100, 103, 452 A.2d 611, 612 (1982). A claimant who establishes the existence of an occupational disease enumerated in section 108 and who is entitled to the section 301(e) presumption that the disease "arose out of and in the course of his employment," must nevertheless show that he or she was *disabled* (lost earning power) as a result of the disease.

The first referee awarded benefits to Hebden for partial disability from coal worker's pneumoconiosis as of August 25, 1983 and continuing until "such time as the claimant's disability ceases or changes in nature...." Finding 3. We know from this, and from Hebden's burden of proving all elements necessary to sustain the award, that the issues of whether and to what extent he was disabled and the cause of that disability necessarily were decided in that first

7. In contrast, a coal miner who establishes the existence of complicated coal worker's pneumoconiosis, *see* note 8, by x-rays or other clinical evidence is conclusively presumed to be totally disabled and entitled to receive federal black lung benefits. Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 921(c)(3).

proceeding. There is nothing else on the record regarding that adjudication of Hebden's claim petition. Therefore, we do not know whether the referee found the existence of simple or complicated coal worker's pneumoconiosis,[8] nor do we know any other particulars of that proceeding.

 The employer's petition to terminate alleged that, *as of March 6, 1987,* Hebden's "disability has *changed* and he is no longer disabled from occupational pulmonary disease." (3a). The burden of proof in a termination proceeding under section 413, 77 P.S. § 772, is on the employer to demonstrate by substantial evidence that the claimant's work-related disability has ceased or, in the alternative, that claimant was able to return to his regular job without any loss of earning power. *Laird v. Workmen's Compensation Appeal Board (Curran),* 137 Pa.Commonwealth Ct. 206, 209, 585 A.2d 602, 603 (1991). If the claimant is currently disabled, the employer must show a lack of causal connection between that disability and the compensable, work-related injury. *McGinley v. Workmen's Compensation Appeal Board (Acme Markets, Inc.),* 77 Pa.Commonwealth Ct. 214, 216–17, 465 A.2d 147, 148–49 (1983).

 The burden on a petitioner under section 413 of the act is to prove that an employee's disability has increased or decreased *after* the date of a referee's award. *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.),* 502 Pa. 178, 185, 465 A.2d 969, 972 (1983). Consistent with *Beissel,* an employer may establish the requisite *change* in a claimant's disability where it demonstrates that, at some point after the award, the disability ceased being related to the original injury, but was at that

---

**8.** Pneumoconiosis is "a general medical diagnostic term used to describe a chronic fibrous reaction in the lungs which is caused by inhalation of dusts." 2 A. Barbieri, *Pennsylvania Workmen's Compensation,* § 7.25 (1975). "[S]imple pneumoconiosis seldom produces significant ventilation impairment, but it may reduce the ability of the lungs to transfer oxygen to the blood. Complicated pneumoconiosis is a more serious disease, for the patient 'incurs progressive massive fibrosis as a complex reaction to dust and other factors.'" *Pauley v. Bethenergy Mines, Inc.,* —— U.S. ——, —— n. 1, 111 S.Ct. 2524, 2527 n. 1, 115 L.Ed.2d 604 (1991).

point caused by a non-work-related condition. *D'Agostino v. Workmen's Compensation Appeal Board (Jacquin)*, 109 Pa.Commonwealth Ct. 162, 165–66, 530 A.2d 1015, 1017 (1987); *Royster v. Workmen's Compensation Appeal Board (National Mines Corp.)*, 102 Pa.Commonwealth Ct. 338, 343–44, 518 A.2d 331, 333–34 (1986).

■ As we held in *Prazinko* in the claim preclusion context, the ultimate issues are different in the initial claim petition proceeding and the subsequent petition to terminate, because the latter concerns itself with *change* in the claimant's disability *after* the date of the award. Because the issue is not the same, there is no issue preclusion.

Hebden argues that the primary issue in the two proceedings in this case *was* the same because the "medical evidence offered by the [employer in the termination proceeding] merely went to contest" the finding of the first referee that Hebden was partially disabled from coal worker's pneumoconiosis. Brief for petitioner, 8. The argument is that the employer has relitigated the issue of the original medical diagnosis of Hebden's pulmonary disease (pneumoconiosis) which the referee found caused his disability as of August 25, 1983.

■ Issue preclusion does prevent an employer from relitigating, by way of a petition to modify or terminate benefits, the original medical diagnosis underlying a referee's finding of work-related causation of a claimant's disability as of the date of a compensation award. The existence and causation of disability and the medical diagnosis of a claimant's disease are issues that are necessarily litigated at a proceeding on a claim petition under section 108 of the act and are essential to the referee's determination. If under the guise of a petition to terminate or modify benefits, an employer attempted to challenge the original diagnosis of an occupational disease or the referee's determination of disability and its cause as of the date of the award, the claimant could successfully assert issue preclusion to prevent relitigation of those essential issues actually

litigated and necessarily decided at the claim petition proceeding.[9]

Upon review of the record, we are convinced that the employer did not attack the 1983 medical diagnosis and 1985 referee's finding that Hebden had coal worker's pneumoconiosis. Instead, the bulk of the employer's evidence was directed at establishing the current state of Hebden's pulmonary condition and of his disability as of March 6, 1987.

Employer's petition alleged that, based "upon recently received medical evidence, claimant's disability has changed and he is no longer disabled from occupational pulmonary disease." (3a). At the hearings, the employer introduced the "recently received medical evidence," consisting primarily of testimony by Drs. Pickerill and Katter based upon their physical examinations of Hebden performed and clinical data obtained in 1987, and a report by Dr. Fino who analyzed all of the extensive medical records from 1977–1988 concerning Hebden's pulmonary condition but focused primarily on data obtained after 1985. All three doctors stated their opinions that, as of 1987, Hebden was not disabled from coal worker's pneumoconiosis or other occupationally acquired lung disease, and that he currently suffered from mild, non-occupational bronchial asthma.

Counsel for employer did question Dr. Pickerill (on direct, 105a–06a) and Hebden's witness, Dr. Klemens (on cross, 37a), regarding a diagnosis of bronchial asthma made in 1979 by Hebden's family physician. While this limited questioning could be viewed as an "attack" on the 1983 diagnosis or the 1985 finding that Hebden was disabled by

9. If an employer believed, based upon after-discovered medical evidence, that a finding of disability from an occupationally acquired disease was predicated upon a misdiagnosis, the employer could, within eighteen months of the award, petition the board for rehearing. Section 426 of the act, 77 P.S. § 871; see Dominijinni v. Workmen's Compensation Appeal Board (DeCarlo), 135 Pa.Commonwealth Ct. 204, 209–10, 581 A.2d 245, 247–48 (1990). An employer may not, after an award has become final, otherwise challenge the medical diagnosis and consequent finding which formed the basis for the award.

pneumoconiosis, it also can be viewed as supporting the opinions of the employer's medical witnesses that, as of 1987, he was not disabled from pneumoconiosis but did suffer from bronchial asthma.

On cross-examination by Hebden's attorney, Dr. Katter agreed with counsel's statement that if Hebden did not currently have pneumoconiosis, then in his opinion "he didn't have pneumoconiosis in 1983 and ... wasn't disabled by it in 1983." (23a). Hebden relies upon this testimony to support his contention that the employer's medical evidence merely "attacked" the 1983 diagnosis/1985 finding of coal worker's pneumoconiosis. Brief for petitioner at 13. We disagree.

This testimony was elicited only on cross-examination, and is the only comment made by any of employer's medical witnesses that directly challenges the 1983 diagnosis. Viewed in this context and in light of the employer's substantial presentation of "recently received medical evidence" post-dating the referee's award in 1985, we cannot say that the employer's medical evidence "merely contested" the earlier diagnosis/finding. The referee's decision also contradicts Hebden's assertion. The referee's review of the medical evidence in no way indicates that she had reconsidered the previous referee's findings or the earlier diagnosis of pneumoconiosis. Findings 10–15. Further, the referee recognized that the employer's petition was "brought to consider the physical condition of the claimant as of March 6, 1987 and beyond." Finding 17. Finally, the referee concluded that employer met its burden "to prove that the disability ceased." Conclusion of law 2.

The employer's petition to terminate did not, as Hebden claims, "merely contest" the original diagnosis of coal worker's pneumoconiosis and the finding of causation of his disability as of the date of the award, but clearly asserted that Hebden's disability had *changed* since that time and that he was *"no longer* disabled" from an occupational pulmonary disease. The issue of a *change* in Hebden's disability since the date of the award was not an issue

decided in the first proceeding, but is a proper basis for a petition to terminate or modify benefits under section 413 of the act. *Beissel; D'Agostino; Royster.*

Hebden, nevertheless, contends that the termination petition necessarily attempts to relitigate the original diagnosis, because coal worker's pneumoconiosis is always irreversible and once a person is disabled by this disease, that person will always remain disabled. In short, Hebden invites us to declare, as a matter of law, that the condition of a person disabled by an occupational disease such as coal worker's pneumoconiosis can never improve, and therefore the issue of his disability can never be relitigated. We decline this invitation.

It is true that we frequently have observed that occupational diseases are "progressive in nature," so that a denial of a claim petition for an occupational disease at one point does not preclude a claimant from filing a claim petition at a later date based upon a worsening in the claimant's condition. *E.g., Petcovic; Fields; Sullivan Trail Manufacturing Co.* However, we never have implied that, *as a matter of law,* such diseases are always irreversible or that once disabled from an occupational disease, a coal worker would always remain disabled.[10] *Prazinko* holds to the contrary and permits an employer to litigate the current state of a claimant's disability even where the referee previously determined that the claimant was *permanently* disabled. 94 Pa.Commonwealth Ct. at 482, 504 A.2d at 389.

In section 413 of the act, the legislature clearly has manifested its intent that either party may petition for

10. The United States Supreme Court has stated that "once contracted [coal worker's pneumoconiosis] is irreversible in both its simple and complicated stages. No therapy has been developed." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 7, 96 S.Ct. 2882, 2888–89, 49 L.Ed.2d 752 (1976). We do not consider this background observation concerning black lung disease (or coal worker's pneumoconiosis) to be a binding declaration of law by the court. As we discuss later, a court requires some evidence as a foundation for the determination of medical facts. We neither dispute nor endorse this statement by the United States Supreme Court, because the record in this case provides us with no factual basis to do so.

modification, reinstatement, suspension or termination of an award, a notice of compensation payable or an agreement "at any time," upon proof that the disability of an injured employee has changed. "The power to reevaluate the question of permanency [of disability] exists because section 413 of the Act provides for review from time to time, so that there is virtually no such thing as a res judicata determination of permanency, or even as to any particular agreed upon or determined extent of disability at any time." 1 A. Barbieri, *Pennsylvania Workmen's Compensation*, § 5.12 (1975) (footnote omitted).

The legislature could have excluded occupational diseases from the operation of section 413, but conspicuously did not. Moreover, the legislature has retained a substantially similar provision for review and modification of awards and agreements to pay compensation for disability from occupational diseases under section 413 of the Pennsylvania Occupational Disease Act.[11]

 It would be beyond the proper scope of appellate review for us to make sweeping declarations of medical science proclaiming the etiology and prognosis of an occupational disease in all cases, particularly in light of these clear expressions of legislative intent that disabilities, including those from occupational diseases, are not static and are presumptively subject to change. In the absence of a fully developed record demonstrating by substantial, competent medical testimony and evidence that a coal worker's pneumoconiosis and disability is irreversible or that resulting disability can never improve, the principle of issue preclusion does not prevent an employer from seeking to terminate a claimant's compensation benefits for disability caused by that occupational disease under section 413 of the act. Hebden has offered no factual medical basis on this record for his assertion that coal worker's pneumoconiosis is always irreversible in cause and disabling effect, nor has Hebden directed us to any legal or medical authority which would justify taking judicial notice of the asserted irrevers-

11. Act of June 21, 1939, P.L. 566, § 413, 77 P.S. § 1513.

ible nature of coal worker's pneumoconiosis or of the impossibility of curing that disease or decreasing disability.[12] We hold, therefore, that the employer was not precluded from litigating the issue of whether Hebden remained disabled from coal worker's pneumoconiosis at some time after the first referee's award.[13]

## V. Burden of Proof

■■■ We also hold that the employer has met its burden of proving that Hebden's disability has ceased or, alternatively, that any remaining disability is no longer related to coal worker's pneumoconiosis.

Dr. Katter examined Hebden on November 2, 1987, and reviewed the results of various clinical tests that had been performed in 1987. Dr. Katter testified that Hebden did not have coal worker's pneumoconiosis, that he "had no pulmonary impairment," and that he "could go back and perform his last job in the mines." (21a). Dr. Pickerill examined Hebden on March 6, 1987 and reviewed medical reports and the results of various clinical tests that had been performed in 1987. Dr. Pickerill testified that claimant did not have coal worker's pneumoconiosis or other occupational lung disease, and that claimant "had the pul-

12. Judicial notice is intended to avoid the necessity of formally introducing evidence in those limited circumstances where the fact sought to be proven is so well known that evidence in support of that fact is unnecessary. *Department of Transportation v. Cassidy*, 103 Pa.Commonwealth Ct. 582, 588, 521 A.2d 59, 62 (1987). Judicial notice must not be used to deprive an adverse party of the opportunity to disprove a disputed fact. *Insurance Adjustment Bureau v. Insurance Comm'r*, 86 Pa.Commonwealth Ct. 491, 495, 485 A.2d 858, 860 (1984).

13. Under our holding in this case, an employer may petition to terminate or modify payment of compensation under section 413, and may petition for rehearing based on after-discovered evidence under section 426. *See* note 9. The act provides these avenues of relief for an employer with a reasonable basis for contesting an employee's disability, but we caution that these provisions must be utilized reasonably and in good faith. Where there is no reasonable basis for contesting liability for compensation, an employer will be required to pay a reasonable sum for costs incurred for attorney's fees, witnesses, necessary medical examinations and the value of unreimbursed lost time, pursuant to section 440 of the act, 77 P.S. § 996.

monary capacity to do the types of jobs required at his last job in the coal mining industry." (102a).[14] Dr. Fino examined the extensive medical reports and clinical data on Hebden's respiratory condition from 1977 to 1988, and submitted a report which concluded that "even though [Hebden] was found to be disabled in 1983; it is my opinion within reasonable certainty that he is not disabled now. He could from a pulmonary standpoint return to his last job in the mines or a job of similar effort." (142a). All three doctors concluded that Hebden currently suffered from a non-occupational pulmonary disease, bronchial asthma.

Dr. Klemens testified, to a reasonable degree of medical certainty, that claimant remained partially disabled from coal worker's pneumoconiosis, and that he was unable to return to work in the mines. (31a, 36a–37a).

 The referee reviewed all of the medical evidence and concluded that the employer's experts were more credible than Hebden's. Resolution of conflicts in the testimony and evidence is a matter for the referee, who may, within her discretion, evaluate the credibility of opposing witnesses and accept the testimony of one medical witness over another. *McCarter v. Workmen's Compensation Appeal Board (Boeing Vertol Co.)*, 94 Pa.Commonwealth Ct. 261, 266–67, 503 A.2d 990, 993 (1986). Where the referee's determina-

14. In his brief, Hebden refers to other portions of Dr. Pickerill's testimony stating that dust exposure could exacerbate Hebden's bronchial asthmatic condition. However, Hebden does not argue that such potential risk of harm from further exposure to coal dust renders him disabled from returning to work despite his pulmonary capacity to do so, nor did Hebden raise this issue below. Accordingly, we have no occasion to assess the employer's proof in light of *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Kudra)*, 136 Pa.Commonwealth Ct. 720, 584 A.2d 1088 (1990) (although claimant had the respiratory capacity to return to work, his doctor testified that he had pneumoconiosis and that he risked further progression of the disease if he was exposed to coal dust; referee accepted claimant's doctor's testimony as credible, and awarded benefits for work-related disability, and this court affirmed). In any event, the referee is free to believe some, all, or none of any witness' testimony, including that of a medical witness. *Gateway Coal Co. v. Workmen's Compensation Appeal Board (Laboda)*, 138 Pa.Commonwealth Ct. 332, 335–336, 588 A.2d 73, 75 (1991).

tion of credibility and resolution of conflicts is supported by substantial evidence,[15] we must affirm. *Id; Crankshaw v. Workmen's Compensation Appeal Board (County of Allegheny)*, 120 Pa.Commonwealth Ct. 148, 153, 548 A.2d 368, 371 (1988), *appeal denied*, 523 Pa. 633, 564 A.2d 1261 (1989).

There is substantial evidence in this record to support the referee's determination of credibility and resolution of conflicting medical evidence, and to support her finding that, as of March 6, 1987, the claimant was "neither partially or totally disabled as a result of coal worker's pneumoconiosis or any occupationally acquired lung disease." Finding 15. Therefore, we affirm.[16]

## ORDER

We affirm the order of the Workmen's Compensation Appeal Board.

---

**15.** Substantial evidence is that relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Temple University v. Workmen's Compensation Appeal Board (Insurance Company of North America)*, 138 Pa.Commonwealth Ct. 394, 401 n. 5, 588 A.2d 63, 66 n. 5 (1991).

**16.** Hebden is at liberty to file a petition for reinstatement at some later date, alleging under section 413 of the act that he has become disabled as a result of an increase or recurrence of disability after the date of termination and that his current disability is work-related. *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 31–32, 584 A.2d 301, 304 (1990). Neither claim preclusion nor issue preclusion would bar Hebden from filing such a petition in good faith based upon medical testimony and subsequent clinical data supporting the conclusion that his work-related disability had increased or recurred following the termination of benefits as of November 2, 1987.