642 A.2d 1149

**Lawrence COOK, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (GOULD, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 11, 1994.

Decided May 11, 1994.

Reargument Denied July 12, 1994.

Petition for Allowance of Appeal Denied Nov. 18, 1994.

David C. Harrison, for petitioner.

Lauri A. Kavulich, for respondent.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Lawrence Cook petitions this Court for review of a Workmen's Compensation Appeal Board (Board) order affirming a referee's decision to terminate his benefits as of September 12, 1989.

Referee Scott Olin found the following pertinent facts:

Cook sustained a work-related injury on August 10, 1978 while working for Gould, Inc. (Gould) as an electrical equipment assembler. A notice of compensation payable was issued on August 30, 1978. Gould filed a suspension petition on November 24, 1979. Thereafter, Cook filed a claim petition, which was treated as a reinstatement petition. On May 5, 1982, Referee Walter Leonard found Cook to be totally disabled as of February 28, 1979 and into the indefinite future due to his August 10, 1978 injury. Gould filed an appeal of this decision to the Board, but later withdrew it. Gould next filed a termination petition on October 27, 1982. Referee Leonard denied that petition in a decision issued on October 9, 1985.

In support of the termination petition now at issue, which alleges that Cook recovered from his work-related disability as of September 12, 1989, Gould presented the testimony of Dr. John Williams, a board-certified orthopedic surgeon, and William Welte, a private investigator. It also introduced surveillance films of Cook's activities. Dr. Williams examined Cook on September 12, 1989 and found no evidence of a herniated disc. Moreover, although Cook had an absent right ankle

jerk, Dr. Williams felt this was due to the normal aging or degenerative process and not to the work injury.

For his part, Cook presented the testimony of Dr. Corey Ruth, who has expertise in orthopedic surgery, and who examined him on November 21, 1989. Dr. Ruth opined that Cook has L4–5 discogenic lumbarsacral [sic] back injury and right L5–S1 radiculopathy causally connected to his August 10, 1978 work injury. Dr. Ruth felt Cook could return to a sedentary position on a part-time basis.

Referee Olin found Dr. Williams' testimony to be "more persuasive and credible" than Dr. Ruth's opinion. The referee then found that Cook did not have disc herniation and that any pain or symptomatology he did have was due to degenerative disc disease not causally connected to his work injury. The referee also found that Cook's testimony as to his severe pain was "severely compromised by surveillance films," and that any pain he did suffer resulted from the aging process. (Referee Olin's decision, January 23, 1992, Findings of Fact Nos. 1, 3–13, pp. 3–5.) On appeal, the Board affirmed. This appeal followed:

█ The first issue Cook raises in its initial brief to us is whether the Board and the referee misapplied this Court's decision in *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.) (Hebden I)*, 142 Pa.Commonwealth Ct. 176, 597 A.2d 182 (1991) to the facts at bar since Gould's medical expert admitted that herniated discs do not heal, but also said that Cook's disability was a result of degenerative disc disease unrelated to his work injury. The second issue Cook raises in his first brief is whether the Board and the referee allowed the issue of his original work injury—a herniated disc—to be relitigated in violation of *Hebden I*.[1]

In that case, Hebden contended "that the principle of 'res judicata' bars a referee from finding that a claimant has

1. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

neither coal worker's pneumoconiosis nor any occupationally acquired lung disease where a prior referee found the claimant to be partially disabled as a result of coal worker's pneumoconiosis." *Hebden I, Id.* at 184–185, 597 A.2d at 186. (Footnotes omitted.) We decided that the doctrine of res judicata—consisting of both claim preclusion and issue preclusion—did not apply and that Hebden's benefits could be terminated on the basis that his disability had changed and ceased.

Attempting to distinguish the case at bar from *Hebden I,* Cook argues in his first brief that there, unlike here, the defense medical expert testified that the claimant's original work-related injury had resolved, not that it had never been. Cook asserts that in this case it was Dr. Williams' opinion that Referee Leonard's prior determinations concerning his disability were incorrect. In response, Gould argues that, pursuant to *Hebden I,* its termination petition did not amount to impermissible relitigation because the petition merely alleged that Cook's disability ceased at a time subsequent to the referee's prior adjudications of disability, not that those adjudications were wrong.

Thereafter, Cook filed a reply brief, stating that one was required by the Supreme Court's reversal of our decision in *Hebden*                                                                   *I.* *See Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.) (Hebden II),* 534 Pa. 327, 632 A.2d 1302 (1993). Gould also filed a reply brief.[2]

Our Supreme Court said in *Hebden II:*

It is admitted in the Commonwealth Court opinion itself that *res judicata* or issue preclusion prevents an employer from relitigating, by way of a petition to modify or terminate benefits, the original medical diagnosis underlying a referee's finding of a claimant's disability as of the date of the compensation award, [*Hebden I* ], 142 Pa.Cmwlth. at 197, 597 A.2d at 182. Yet, that is, in essence, what happened here. It is no mystery why res judicata or issue

---

**2.** *Hebden II* was filed by our Supreme Court on November 12, 1993. Cook filed its first brief to this Court on November 18, 1993 and its reply brief on January 10, 1994.

preclusion applies to these situations. If it did not, disability victims could be continually harassed with petitions and hearings where they would be repeatedly forced to redemonstrate or redefend their claim of occupational disease and consequent disability. Such a system would be intolerable. We do not lose sight of the fact that the Workmen's Compensation Act at Section 413 (77 P.S. § 772)[3] expressly provides that an award may be terminated based upon *changes* in the employee's disability. But that raises the logical question of whether an employee's disability is *changeable* in a given case. If it is, an employee's condition may be re-examined at a later time to see if he is still disabled or not. If it is not, an attempt to re-examine the employee's condition is merely a disguised attempt to relitigate what has already been settled. We think that the latter is what occurred here.

In the instant case, logically, the employer should first have addressed the issue of whether pneumoconiosis is reversible or not. On this record, the issue was first raised by Dr. Klemens' testimony for Appellant! He testified clearly that the disease is irreversible and progressive, that is, it only gets worse over time (R., 30–31a). This testimony, at a minimum, shifts the burden of production to the employer to present rebuttal evidence. Nowhere in this record or in the briefs filed with this Court does it do so.... We find that the employer here did not meet its burden of producing evidence to rebut Appellant's contention that pneumoconiosis is not reversible.

Unable to show the disease's reversibility, the employer here is precluded from trying to show that the disease has, in fact, been reversed in the case of Appellant. To allow the employer to do so would simply be allowing it to revisit the initial finding of Appellant's disability and, in a disguised way, to relitigate that issue. Sound principles of res judicata, collateral estoppel and issue preclusion bar such an attempt.

3. The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

*Id.,* 534 Pa. at 330–332, 632 A.2d at 1304–1305. (Emphasis in original.) (Footnote omitted and added.)

Cook now maintains that, under *Hebden II,* the burden was on Gould to establish changeability. Cook asserts that the two differences between *Hebden II* and this case—both in his favor—are that, here, 1) the employer's medical expert established irreversibility; and 2) even the employer's expert admitted Cook has a continuing disability (although one causally connected to degenerative disc disease rather than his work injury). Therefore, the argument goes, the Board's decision should be overturned because the evidence shows that Cook's herniated disc is not reversible and that he has a present disability, which must be presumed related to his herniated disc.

For its part, Gould responds that *Hebden II* is fact-specific and has no application to orthopedic injuries. Gould also maintains that Dr. Williams' testimony did not establish irreversibility, but showed only that Gould did not have a herniated disc as of September 12, 1989—the date of the doctor's examination.

We have read *Hebden II* and are satisfied that its authority cannot be extended to any and every disability which, in a termination petition, has been alleged to have changed. This is so even though Section 413 of the Act does not implicate only occupational diseases and changes in disabilities arising therefrom. As we have already quoted, our Supreme Court states in *Hebden II* that section 413 "expressly provides that an award may be terminated based upon *changes* in the employee's disability," *id.* at 331, 632 A.2d at 1304 (emphasis in original)—and that, therefore, it is only "logical" that the issue of a termination of benefits based on a change in disability begs the question of whether a disability is subject to change "in a given case." *Id.* Obviously, the Supreme Court's use of the language "in a given case" precludes a conclusion by us that it means *in every case.*

We have also carefully reviewed Dr. Williams' testimony. The doctor opined that, as of the date of his September 12,

1989 examination of Cook, Cook did not have a herniated disc. Dr. Williams testified that he reached this conclusion "just based on [his] examination." (Notes of Testimony, Deposition of Dr. John T. Williams, March 16, 1990, p. 29.) Certainly, from our review of the doctor's testimony, he did not challenge any of Cook's previous diagnoses. This is true even in light of the fact that he believed Cook's present disability to be the result of degenerative disc disease. Moreover, although Dr. Williams opined on *cross-examination* that herniated discs do not resolve themselves (N.T., Deposition of Dr. John T. Williams, March 16, 1990, pp. 38–40), he also stated that, even a person whose herniated disc impinges on a nerve root "may be pain free for years." (N.T., Deposition of Dr. John T. Williams, March 16, 1990, p. 57.)

We agree with Gould that *Hebden II* has no application to this case involving the termination of benefits for a previously adjudicated, work-related disability arising out of a herniated disc. That is not to say, however, that *Hebden II* bears only upon occupational disease cases. Rather, it most assuredly applies to the many different types of disability cases wherein there is a danger of relitigation of the original medical diagnosis serving as grounds for a referee's award. Here, Gould did no more than attempt to show that—at a date subsequent to the referee's last award—Cook's work-related disability ceased. Therefore, we reject Cook's contention that *Hebden II* is apposite.

Next, Cook raises the question of whether the Board erred in not reversing this case since it had decided that the referee mistakenly drew an adverse inference from his failure to produce a certain witness, Dr. De Moura, who had treated him and previously testified on his behalf.

In reaching its conclusion not to reverse, the Board stated:

We agree with the claimant that the Referee erred by presuming that Dr. De Moura's testimony would be unfavorable to the claimant. Where a witness is equally available for call by either party and not particularly within the control of one party, no inference can be taken by a party's

failure to call the witness. [O'Rourke v. Rao, 411 Pa. Superior Ct. 609, 602 A.2d 362 (1992)]. In this instance, however, the Referee had substantial evidence to support his Order of Termination without the improperly invoked presumption that Dr. De Moura's testimony would be adverse. Therefore, we believe that this was harmless error which did not directly and materially affect the Referee's Decision.

(Board Opinion, filed June 28, 1993, p. 4.)

■ Cook has attempted to show—mostly by elucidating how credibility determinations are made—that the referee's adverse inference resulted in prejudice to him, but we are not convinced that any prejudice occurred. Instead, we agree with the Board and Gould that substantial evidence, existing apart from the referee's misapprehension of Dr. De Moura's absence, in the form of Dr. Williams' testimony, proved Gould's case.

■ Last, Cook presents the question of whether the Board erred in not reversing this case since it had decided that the referee relied on surveillance films which had "no probative value." We have read the Board's decision concerning this matter and concur with Gould's analysis that the Board merely found that the films "standing alone" lacked probative value. (Board Opinion, filed June 28, 1993, p. 4.) The referee was clear that the films were admissible to corroborate the other competent evidence. Although "surveillance films alone are inadequate to sustain the evidentiary burden of showing that a claimant's disability has been reduced," *Sule v. Workmen's Compensation Appeal Board (Kraft, Inc.)*, 121 Pa.Commonwealth Ct. 242, 244–245, 550 A.2d 847, 849 (1988), Dr. Williams' testimony sufficed to show that Cook's work-related disability had ceased.

We therefore affirm.

### ORDER

AND NOW, this 11th day of May, 1994, the order of the Workmen's Compensation Appeal Board, No. A92–0369, filed June 28, 1993, is affirmed.