# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian MacTough,                             :
                 Petitioner   :
                           :
       v.                                    :   No. 748 C.D. 2019
                           :   Submitted: November 27, 2019
Workers' Compensation Appeal             :
Board (City of Philadelphia),            :
                 Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: May 13, 2020**

      Brian MacTough (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated May 22, 2019. The Board affirmed an order of Workers' Compensation Judge Patricia Bachman (WCJ Bachman), which granted the termination petition filed by the City of Philadelphia (Employer).[1] We now affirm.

## I. BACKGROUND

      The history of this matter involves two separate injuries that Claimant sustained during the nineteen years he worked for Employer. On August 31, 1993,

---

[1] WCJ Bachman also denied Claimant's penalty petitions. Only the grant of the termination petition, however, is before the Court in this appeal.

while working for Employer as a mechanic, Claimant sustained an injury to his cervical spine, which the parties described as "cervical spine trauma" (1993 work injury). (Reproduced Record (R.R.) at 36a, 57a.) In February 1994, Claimant returned to light-duty work for Employer as a mechanical maintenance coordinator at no loss of earnings. (*Id.* at 24a, 36a.) In spring of 2010, however, Claimant began to experience the same type of pain in his cervical spine that he had previously experienced in 1993 and 1994. (*Id.* at 36a.) The pain gradually worsened each day that Claimant worked for Employer. (*Id.*) As a result, on June 10, 2010, Claimant filed a reinstatement petition and a penalty petition, alleging that his 1993 work injury had recurred and that he had returned to full disability as of April 25, 2010, the date on which his family doctor restricted him from working. (*Id.* at 36a-37a.) Thereafter, on September 1, 2010, Claimant also filed a claim petition, alleging that he sustained a new injury on April 25, 2010—*i.e.*, an aggravation of his 1993 work injury. (*Id.*)

In support of his petitions, Claimant produced the deposition testimony of Leonard Bruno, M.D., who diagnosed Claimant with acute and chronic disc herniations at the C5-6 and C6-7 levels, resulting in left-sided radiculopathy. (*Id.* at 37a.) Dr. Bruno opined that Claimant's repetitive work duties from 1994 to 2010—*i.e.*, the bending of his head at his computer and desk—accelerated the degenerative changes in Claimant's cervical spine at C5-6 and C6-7, both of which were injured at the time of Claimant's 1993 work injury. (*Id.* at 37a-38a.) In opposition to Claimant's petitions, Employer submitted the deposition testimony of Mario Arena, M.D., who opined that the degenerative changes in Claimant's spine were preexisting and unrelated to a work injury. (*Id.* at 38a.) By decision and order dated October 28, 2011, WCJ Bachman granted Claimant's claim petition, dismissed

Claimant's penalty petition, and denied Claimant's reinstatement petition as moot (2011 WCJ decision). (*Id.* at 40a.) In so doing, WCJ Bachman credited Dr. Bruno's testimony, specifically noting that she was "persuaded that an aggravation of Claimant's neck and cervical injury [occurred] over time, [because] Claimant continued to work on and after 1994 up until April 25, 2010." (*Id.* at 39a.) Accordingly, WCJ Bachman essentially concluded that Claimant established that he sustained "a new injury" on April 25, 2010, in the form of an aggravation/acceleration of the degenerative changes at C5-6 and C6-7 (2010 work injury), cervical levels that had previously been injured at the time of the 1993 work injury. (*Id.* at 37a, 40a.)

Sometime thereafter, Employer filed a termination petition, alleging that Claimant had fully recovered from his 2010 work injury. (*Id.* at 24a.) In support thereof, Employer presented the deposition testimony of Robert Keehn, M.D., who acknowledged that Claimant continued to demonstrate objective findings on physical examination, including "atrophy of the cervical spine in the area of the shoulders consistent with a cervical radiculopathy in the left trapezius." (*Id.* at 26a-27a.) Despite these objective findings, Dr. Keehn opined that Claimant had fully recovered from his 2010 work injury and that any ongoing impairments and restrictions relative to Claimant's cervical spine were not work related at least as of July 3, 2013, the date of his physician's affidavit of recovery. (*Id.* at 26a, 30a.) In opposition to Employer's termination petition, Claimant presented the deposition testimony of Mark DeLaurentis, M.D., who indicated that Claimant's magnetic resonance imaging (MRI) films from 2010, 2012, and 2013, evidenced "significant adhesions in the epidural spaces of C5-6 and C6-7, as well as extensive scar tissue." (*Id.* at 29a.) Ultimately, Dr. DeLaurentis opined that Claimant's ongoing

3

impairments and restrictions—*i.e.*, degeneration and bilateral radiculopathy in the cervical spine—were related to Claimant's 2010 work injury. (*Id.* at 28a-30a.) By decision and order dated August 12, 2015, Workers' Compensation Judge Stephen Harlen (WCJ Harlen) accepted Dr. DeLaurentis' testimony as credible, concluded that Claimant had not recovered from the 2010 work injury, and denied Employer's termination petition (2015 WCJ decision). (*Id.* at 30a-32a.)

Subsequent thereto, on January 20, 2017, Employer filed the termination petition that is the subject of this appeal (Termination Petition), alleging that Claimant had fully recovered from the 2010 work injury as of December 20, 2016. In opposition to Employer's Termination Petition, Claimant testified that, since the time of WCJ Harlen's decision, he has treated with Randal Smith, M.D., for his cervical spine injury. (*Id.* at 53a.) Dr. Smith has prescribed a corrected course of medication and home heat therapy. (*Id.* at 54a.) Claimant explained that he continues to suffer pain and numbness in his neck, left side, arm, and fingers since the 2010 work injury and that such pain prevents him from engaging in activities for more than an hour at a time and from sleeping well. (*Id.* at 56a-59a.) Claimant testified further that his position with Employer as a mechanical maintenance coordinator involved approximately sixty percent office work and forty percent "field work"—*i.e.*, daily trips around the maintenance facility and trips to various work sites—and required him to be able to climb ladders and lift up to fifty pounds. (*Id.* at 57a-58a.) Claimant did not believe that he was physically capable of returning to that position at any point during the two-year period before the October 12, 2017 hearing. (*Id.* at 58a.)

On cross-examination, Claimant admitted that he began seeing Dr. Smith at the suggestion of his attorney. (*Id.* at 63a.) He discussed his use of a variety of

4

medications since the 2010 work injury and explained that he had never had neck surgery and could not undergo physical therapy without sustaining further injury. (*Id.* at 63a-69a.) Claimant also stated that he has not sought or obtained any employment since he stopped working for Employer at the time of the 2010 work injury. (*Id.* at 68a-69a.) Finally, Claimant explained that he suffered a fall in 2015, resulting in a few broken ribs but no increased pain in his neck. (*Id.* at 72a.)

Claimant also presented the deposition testimony of Dr. Smith, who is board certified in orthopedic surgery and who has treated Claimant since March 2016. (*Id.* at 83a, 90a.) Dr. Smith recounted Claimant's symptoms upon presentation as including pain and stiffness in the neck, pain and numbness in the left arm, and night sweats. (*Id.* at 91a.) Dr. Smith's initial physical exam of Claimant revealed spasms in Claimant's left trapezius and a guarded range of motion, both of which indicated the protection of an injured area. (*Id.* at 93a.) Dr. Smith described his initial diagnosis of Claimant's 2010 work injury as herniated discs, progressive degenerative disc disease in the cervical spine, and resulting chronic cervical pain and radiculopathy. (*Id.* at 94a.) Dr. Smith also explained that he has continued to treat Claimant regularly since his initial exam and diagnosis, during which time his diagnosis has not changed and Claimant's symptoms have not improved. (*Id.* at 96a.) Dr. Smith testified further that, on December 14, 2016, six days before Lawrence Barr, D.O., performed an independent medical examination (IME) of Claimant, Claimant's symptoms remained virtually unchanged from what they had been since he had first treated Claimant approximately nine months earlier. (*Id.* at 97a-98a.) Dr. Smith also described a subsequent exam on January 13, 2017, during which he found that Claimant's symptoms had worsened, with additional symptoms of radiculopathy on Claimant's right side. (*Id.* at 99a.) Dr. Smith further

5

testified that Claimant had not fully recovered from his 2010 work injury and requires further treatment for such injury. (*Id.* at 99a.) Furthermore, he considers Claimant to be permanently disabled from all employment. (*Id.* at 113a.)

Dr. Smith also discussed some of Claimant's test results, including an MRI conducted on July 15, 2016, and an electromyography test (EMG) conducted on November 23, 2016. (*Id.* at 100a-01a.) Concerning the MRI, Dr. Smith testified that its results were consistent with Claimant's history and clinical examination. (*Id.* at 102a-03a.) Concerning the EMG, he stated that the test showed left-sided C6-7 radiculopathy with acute and chronic denervation, and right-sided C6-7 radiculopathy with chronic denervation—findings which were consistent with the MRI, his diagnosis, and the 2011 and 2015 WCJ decisions. (*Id.* at 103a-04a.) When questioned about how acute (as opposed to chronic) denervation could be consistent with a six-year-old injury, Dr. Smith explained that the 2010 work injury produced chronic symptoms that are exacerbated by daily activities, resulting in acute symptoms. (*Id.*) Dr. Smith testified that Claimant's symptoms arising from the 2010 work injury have been constant and progressive and that Claimant has not recovered and remains disabled because of the 2010 work injury. (*Id.* at 106a.) He also explained that objective medical evidence—including multiple MRIs showing progressive cervical degeneration, multiple EMGs, and Claimant's loss of mobility—supports his opinion that the 2010 work injury has not ceased and that Claimant requires further treatment for recovery. (*Id.* at 106a-07a, 113a.)

On cross-examination, Dr. Smith explained that he treats adult patients of all ages and is aware that a progressive disease could suffer an intervening aggravation and then return to a previous baseline condition once the aggravation resolves. (*Id.* at 115a-17a.) Dr. Smith described the progression of Claimant's degenerative

disc disease and radiculopathy, however, as being primarily caused by his work-related injuries and not primarily age related. (*Id.* at 122a-23a.) Dr. Smith explained that "[Claimant's] level of disability, his level of discomfort would not be nearly what it is now if he had not had his work injuries." (*Id.*)

In support of its Termination Petition, Employer presented the deposition testimony of Dr. Barr, who is board certified in orthopedic surgery. (*Id.* at 249a.) Dr. Barr testified that, during the physical examination portion of his IME, Claimant reported tenderness in his back and reduced sensation in his left arm and hand, but Dr. Barr observed no spasms, clonus, arm atrophy, or other clinical evidence of radiculopathy. (*Id.* at 259a-61a.) After a comprehensive review of Claimant's medical history and records—including the 2011 WCJ decision and MRIs from 2012 to 2016—Dr. Barr concluded that, although Claimant continues to suffer from disc degeneration in the cervical spine, he has recovered from the 2010 work injury. (*Id.*) Dr. Barr explained that the progressive degeneration and radiculopathy shown in Claimant's MRI and EMG results were caused by "the normal aging process" that occurred *after* the 2010 work injury and are not causally related to the 2010 work injury. (*Id.* at 263a-65a, 270a.)

Dr. Barr also opined that Claimant was capable of returning to his position as a mechanical maintenance coordinator with Employer. (*Id.* at 265a.) He explained that the medium-duty restrictions that he placed upon Claimant were related to "the degenerative disc disease of the cervical radiculopathy," not the 2010 work injury. (*Id.* at 265a-66a.) On cross-examination, Dr. Barr confirmed that Claimant presented with cervical radiculopathy, which is consistent with the results of the EMG conducted about one month before the IME. (*Id.* at 271a.) Dr. Barr conceded,

7

however, that Claimant continues to suffer from one of the "subject work injuries" identified in the 2011 WCJ decision—*i.e.*, C6-7 radiculopathy. (*Id.* at 272a.)

By decision and order dated March 9, 2018, WCJ Bachman granted Employer's Termination Petition. In so doing, WCJ Bachman summarized the witnesses' testimony and made the following relevant findings of fact and credibility determinations:

6. This Workers' Compensation Judge [(WCJ)] . . . finds Claimant's testimony credible regarding his work injury and depiction of his symptoms but does not find Claimant's testimony credible as to his perception that his condition is currently related to the [2010 work] injury on and after December 20, 2016.

7. This [WCJ] . . . finds that the opinions of [Dr. Barr] are more credible than those of [Dr. Smith], particularly when Dr. Barr testified that Claimant has fully recovered from his [2010 work injury]. This [WCJ] adopts Dr. Barr's opinion as a finding of fact. In support, the following considerations are noted:

a) There is no dispute that Claimant suffers from degenerative disease of the cervical spine. In [the 2011 WCJ decision], this [WCJ] adopted the opinion of [Dr. Bruno] that Claimant suffered from disc herniation at the C5-6 and C6-7 level[s] with left-sided radiculopathy. [This WCJ] also adopted Dr. Bruno's opinion that "Claimant's injuries were aggravated by the repetitive work duties Claimant performed over the years" including "repetitive bending of the head at the computer and desk," which "caused an acceleration of the disease process, and radiculopathy complaints."

b) Both physicians agree that the disease process continues and that Claimant's cervical spine in 2017 is in worse condition than in 2010. He now has right-sided radiculopathy, which Dr. Smith opined is related to the work events. However, Claimant has not worked since 2010. He cannot argue that a degeneration that occurred, say, in 2015 and

8

resulted in right-sided radiculopathy was caused by "repetitive bending of the head at the computer and desk" from 1993 to 2010. Claimant's cervical spine continues to degenerate not because of work activities he performed decades ago but, rather, because of the ordinary process of aging.

(WCJ Bachman's Decision, Mar. 9, 2018, at 7.) Based on these findings and credibility determinations, WCJ Bachman concluded that Employer met its burden of proof and established that, as of December 20, 2016, "Claimant [had] fully recovered from *the aggravation of* the underlying degenerative disc disease that occurred on April 25, 2010" and that Claimant's ongoing symptoms were "the result of the underlying disease process, not *the aggravation thereof*." (*Id.* (emphasis added).) Claimant appealed WCJ Bachman's March 9, 2018 decision to the Board, which affirmed. Claimant now petitions this Court for review.

## II. ARGUMENTS

On appeal,[2] Claimant argues that the Board erred in affirming WCJ Bachman's March 9, 2018 decision to grant Employer's Termination Petition because: (1) WCJ Bachman permitted Employer to relitigate the cause of Claimant's injuries and, thus, failed to give proper issue-preclusive effect to the 2011 and 2015 WCJ decisions; and (2) WCJ Bachman's finding that Claimant had fully recovered from his 2010 work injury is not supported by substantial evidence.[3]

---

[2] This Court's review is limited to a determination of whether an error of law was committed, whether findings of fact are supported by substantial evidence, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[3] We have reordered Claimant's arguments for the purpose of discussion and disposition.

9

### III. DISCUSSION

### A. Res Judicata/Issue Preclusion

Claimant argues that the Board erred by affirming WCJ Bachman's March 9, 2018 decision, granting Employer's Termination Petition, because WCJ Bachman permitted Employer to relitigate the cause of Claimant's injuries and, thus, failed to give proper issue-preclusive effect to the 2011 and 2015 WCJ decisions. More specifically, Claimant contends that the 2011 and 2015 WCJ decisions already determined that Claimant's cervical degeneration and radiculopathy—from which he still suffers—are work related. The decisions, therefore, should preclude Employer's attempt to terminate Claimant's benefits. Claimant asserts that Employer's filing of the Termination Petition is a disguised attempt to relitigate an issue already decided (*i.e.*, the work-relatedness of Claimant's injuries). In response, Employer argues that Claimant has mischaracterized the nature of Claimant's 2010 work injury and has overstated the issue-preclusive effect of the 2011 WCJ decision. More specifically, Employer contends that, rather than relitigating the cause of the 2010 work injury, it permissibly showed that the normal aging process, rather than the work-related aggravation, is the present cause of Claimant's continuing disability.

The doctrine of res judicata incorporates two distinct principles of preclusion—collateral estoppel (or issue preclusion) and technical res judicata (or claim preclusion). *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001). Here, although Claimant uses terminology from both of these principles in his brief, his argument actually focuses on collateral estoppel (or issue preclusion), which bars parties from relitigating particular issues

10

decided in prior litigation.[4]  *See Pucci v. Workers' Comp. Appeal Bd. (Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998).  Issue preclusion applies where, *inter alia*, "the issue decided in the prior case is identical to the one presented in the later case."  *Id*. at 648.

In the workers' compensation context, "issue preclusion prevents an employer from relitigating, by way of a petition to . . . terminate benefits, *the original medical diagnosis* underlying a referee's finding of a claimant's disability as of the date of the compensation award."  *Hebden II*, 632 A.2d at 1304 (emphasis added).  In *Hebden II*, the disease at issue had already been adjudged as progressive and irreversible in a prior proceeding.  Accordingly, our Supreme Court held that the employer's attempt to show that the disease had abated was "merely a disguised attempt to relitigate what ha[d] already been settled"—*i.e.*, that the claimant's work-related injury was permanent and, thus, continued to be the cause of his disability.  *Id.*  The *Hebden II* court added, however, an important caveat to its holding:

> We do not lose sight of the fact that [Section 413 of the Workers' Compensation Act[5]] expressly provides that an award may be terminated based upon *changes* in the [claimant's] disability. . . . [T]hat raises the logical

---

[4] In contrast, technical res judicata (or claim preclusion) prevents parties from relitigating entire claims (as opposed to specific legal or factual issues within a claim).  *See Henion*, 776 A.2d at 365.  Claim preclusion requires, *inter alia*, that the old and new proceedings have the same ultimate issues.  *Hebden v. Workmen's Comp. Appeal Bd. (Bethenergy Mines, Inc.)*, 597 A.2d 182, 190 (Pa. Cmwlth. 1991) (*Hebden I*), *rev'd on other grounds*, 632 A.2d 1302 (Pa. 1993) (*Hebden II*).  In the workers' compensation context, we have consistently held that each subsequent claim or termination petition presents different ultimate issues because "[t]he ultimate issue . . . is whether the claimant is disabled *at the time alleged in each petition*."  *Hebden I*, 597 A.2d at 192 (emphasis in original).  Although it reversed *Hebden I* on other grounds, the Pennsylvania Supreme Court confirmed that "*issue* preclusion," not claim preclusion, applies in these situations.  *Hebden II*, 632 A.2d at 1304 (emphasis added).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

11

> question of whether [a claimant's] disability is *changeable* in a given case. If it is, [a claimant's] condition may be re-examined at a later time to see if he is still disabled or not.

*Id.* (emphasis in original). Thus, although issue preclusion protects the original medical diagnosis of the work-related injury from relitigation, it does not prevent termination based on later changes in the disability unless the initial determination declared the disability to be permanent.

Concerning an employer's attempt to show that a disability has changed, we have said:

> It is well established that an employer seeking to terminate workers' compensation benefits bears the burden of proving by substantial evidence *either* that the [claimant's] disability has ceased, *or* that any current disability arises *from a cause unrelated to the [claimant's] work injury*. [The e]mployer must show that any continued disability is the result of an independent cause or the lack of a causal connection between the continued disability and the original compensable injury. In either situation, this is a considerable burden because the claimant's disability is presumed to continue until demonstrated otherwise.

*Parker v. Workers' Comp. Appeal Bd. (Dock Terrace Nursing Home)*, 729 A.2d 102, 104-05 (Pa. Cmwlth. 1999) (emphasis added) (citations omitted). "[I]f an employer asserts not that the disability has changed, but that there is a[ non-work-related] cause for the disability, . . . the employer bears 'the burden of proving that an independent cause . . . arose *after* the [claimant began receiving benefits].'" *Gumro v. Workmen's Comp. Appeal Bd.*, 626 A.2d 94, 97 (Pa. 1993) (emphasis in original) (quoting *Beissel v. Workmen's Comp. Appeal Bd. (John Wanamaker, Inc.)*, 465 A.2d 969, 972 (Pa. 1983)). Under this line of cases, it is permissible for an employer to (1) accept that the initial injury and resulting disability were work

related, and then (2) prove that "the . . . disability is *no longer* work[]related." *Id.* (quoting *Beissel*, 465 A.2d at 972) (emphasis added).

Applying these principles to the instant matter, it appears that Claimant misunderstands a crucial conceptual distinction. Contrary to Claimant's assertions, neither Employer nor WCJ Bachman's March 9, 2018 decision relitigated or revisited "the cause of Claimant's *injuries*." (Claimant's Br. at 14.) Rather, Employer sought to prove that Claimant had recovered from the 2010 work *injury* as of a specific date—*i.e.*, December 20, 2016—and that the cause of any remaining *disability* is related to the natural aging process, not the 2010 work injury. Importantly, the injury at issue is not the *disability*, but rather, the work-related *aggravation of* the degenerative changes in Claimant's cervical spine that *resulted in* disability, as determined by WCJ Bachman in the 2011 WCJ decision. In addition, in the 2015 WCJ decision, WCJ Harlen denied Employer's prior termination petition after determining that Claimant had not *at that time* recovered from the 2010 work injury. Neither the 2011 WCJ decision nor the 2015 WCJ decision determined that the 2010 work injury was permanent or irreversible or that all of Claimant's ongoing cervical degeneration and radiculopathy will *necessarily* always be work related. Accordingly, neither decision precludes reexamination of the cause of Claimant's ongoing disability at a later date. *See Hebden II*, 632 A.2d at 1304; *Parker*, 729 A.2d at 104-05. In other words, the 2011 and 2015 WCJ decisions do not preclude the instant action because the issues they decided are not "identical to the one presented" now. *Pucci*, 707 A.2d at 648.

## B. Substantial Evidence

Claimant argues that the Board erred by affirming WCJ Bachman's March 9, 2018 decision granting Employer's Termination Petition because WCJ

Bachman's finding that Claimant had fully recovered from his 2010 work injury is not supported by substantial evidence. More specifically, Claimant contends that Dr. Barr's full-recovery opinion does not constitute substantial evidence to support WCJ Bachman's March 9, 2018 decision because Dr. Barr (1) failed to acknowledge the work-related nature of the 2010 work injury, and (2) did not possess an adequate understanding of Claimant's medical history because he failed to review one of Claimant's 2010 MRIs and the 2015 WCJ decision. In response, Employer argues that Dr. Barr's testimony constitutes substantial evidence to support WCJ Bachman's March 9, 2018 decision because Dr. Barr properly acknowledged the 2010 work injury and 2011 WCJ decision and comprehensively reviewed Claimant's medical history.

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). Matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* In determining whether the WCJ's findings are supported by substantial evidence, we may not reweigh the evidence or the credibility of the witnesses but must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). If substantial evidence supports the WCJ's necessary findings, it is irrelevant whether there is evidence to support a contrary finding. *Williams*, 862 A.2d at 143-44.

To succeed in a termination petition, the employer bears the burden to prove that the claimant's disability has ceased and/or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Comp. Appeal Bd. (J.C. Penney*

14

*Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 1074 (Pa. 2000). "An employer proves full recovery with unequivocal, competent medical evidence." *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010). In order to render unequivocal, competent testimony, a medical expert witness must have a proper foundation, two aspects of which are at issue here. First, "[t]his Court consistently holds a medical opinion that does not recognize the work-relatedness of an injury previously determined to be work[]related is insufficient to support a termination of benefits." *Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 218 (Pa. Cmwlth. 2008); *see also Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1199 (Pa. Cmwlth. 2007) ("[A]n employer's expert must recognize the work injury . . . and opine that the claimant has fully recovered from *that* injury." (emphasis added)), *appeal denied*, 944 A.2d 752 (Pa. 2008). Second, the expert must have a "full understanding" of the claimant's medical history. *Hall*, 3 A.3d at 740. A partial or inaccurate medical history will not support a full-recovery opinion. *See Chik-Fil-A v. Workers' Comp. Appeal Bd. (Mollick)*, 792 A.2d 678, 689 (Pa. Cmwlth. 2002) (holding expert testimony incompetent where expert had "*no* knowledge of [c]laimant's prior relevant medical records and treatment[] or *any* previous diagnostic test results" (emphasis added)).

Here, we agree with Employer that Dr. Barr's full-recovery opinion is competent and provides substantial evidence to support WCJ Bachman's finding that Claimant had fully recovered from the 2010 work injury as of December 20, 2016, such that it is no longer the cause of his ongoing disability. First, Dr. Barr properly acknowledged the work-related nature of the 2010 work injury. He based his opinion that Claimant "had recovered" on his understanding that the 2010 work

15

injury was a "*work* injury . . . in the nature of [an] aggravation." (R.R. at 262a (emphasis added).) He also specifically testified that he was aware of the 2011 WCJ decision and the "work injuries" it described. (*Id.* at 272a.) Second, Dr. Barr based his opinion on a comprehensive review of Claimant's medical history, including Claimant's own description of his medical history, the 2011 WCJ decision, and dozens of Claimant's medical records, including, but not limited to, Claimant's MRIs from 2012 to 2016 and notes from Claimant's prior physicians. (*Id.* at 257a-61a, 296a-97a.) Given the extent of Dr. Barr's review of Claimant's medical history, we cannot agree with Claimant that Dr. Barr's full-recovery opinion was based on a partial or inaccurate medical history simply because Dr. Barr did not review a single MRI from 2010 or the 2015 WCJ decision. *See Chik-Fil-A*, 792 A.2d at 689. Based on his review of Claimant's history and medical records, Dr. Barr concluded that, although Claimant continues to suffer from disc degeneration in the cervical spine, he has recovered from the 2010 work injury. (*Id.* at 259a-61a.) Dr. Barr attributed Claimant's current condition and his ongoing disability to "the normal aging process," not the 2010 work injury. (*Id.* at 263a-65a, 270a.) This competent testimony provides substantial evidence to support WCJ Bachman's finding that Claimant had fully recovered from *the aggravation of* the underlying degenerative disc disease that occurred on April 25, 2010.[6]

---

[6] Claimant further argues that Dr. Barr's full-recovery opinion cannot provide substantial evidence for WCJ Bachman's findings because Dr. Barr's opinion was based on an improper hypothetical assumption/question. We disagree. As Employer points out, Claimant fails to identify how the relevant question was either incomplete or hypothetical. While the question may have asked Dr. Barr to "assume . . . Claimant was initially hurt at work on August 31, 1993," that is not a counterfactual assumption. (R.R. at 261a.) More importantly, neither the question nor Dr. Barr's response relied on that assumption. Instead, counsel made clear at the end of his question that Dr. Barr was to give his opinion based "upon the medical history [he] gathered." (*Id.* at 262a.)

16

## IV. CONCLUSION

For the foregoing reasons, we conclude that WCJ Bachman did not fail to give appropriate preclusive effect to the 2011 and 2015 WCJ decisions in granting Employer's Termination Petition. We further conclude that the record includes substantial, competent evidence to support WCJ Bachman's finding that Claimant had fully recovered from the 2010 work injury as of December 20, 2016. Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian MacTough,                              :
                    Petitioner              :
                                            :
          v.                                :   No. 748 C.D. 2019
                                            :
Workers' Compensation Appeal                :
Board (City of Philadelphia),               :
                    Respondent              :

# **O R D E R**

AND NOW, this 13th day of May, 2020, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
P. KEVIN BROBSON, Judge